LOUIS HELLER, ASSIGNEE OF B. & S. EXCAVATING AND CONSTRUCTION COMPANY, AS CORPORATION, PLAINTIFF-APPELLANT, v. CITY OF PLAINFIELD, DEFENDANT-RESPONDENT.

Submitted May 28, 1937—Decided September 22, 1937.

For the plaintiff-appellant, *Aaron Heller.*

For the defendant-respondent, *William Newcorn.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. This is an appeal from a judgment of the Passaic County Circuit Court in favor of the defendant. The case was submitted to the trial court, without a jury, upon a written stipulation of the facts and involves a construction of the Municipal Mechanics' Lien act (sections 5 and 7, chapter 280, *Pamph. L.* 1918) entitled "An act to secure the payment of laborers, mechanics, &c., employed upon or furnishing materials towards the performance of any work in cities, towns, townships and other municipalities in this state."

The facts are that the defendant, city of Plainfield, entered into a contract on November 7th, 1930, with the Paino Construction Corporation for the construction of a storm sewer in that city and that during the months of December and January following, the contractor entered into contracts with the assignor of the plaintiff to perform certain work as a subcontractor. On April 23d, 1931, the plaintiff (subcontractor) served a notice on the city clerk of Plainfield, claiming $5,275.42 for labor and material furnished the contractor. The lien was against money due or to become due to the contractor. The notice was entered in the lien book of the municipality and the city clerk informed the treasurer and the engineer of the municipality that the stop-notice had been filed. The contractor was likewise notified. The contractor countered with a notice to the municipal authorities that it

disputed the lien claim and, under the provisions of section 5 of the statute, *supra,* tendered a bond of the Union Indemnity Company in double the amount of the claim filed. There was an informality in the first bond tendered and on May 4th, 1931, the contractor offered a new bond.

The fifth section of the statute, *supra,* reads as follows:

"5. The lien shall attach from the time of the filing thereof to the extent of the liability of the contractor or subcontractor, as the case may be, for the claim preferred upon any funds which may be due or to grow due to the said contractor from the municipality under the contract against which the lien is filed. *Provided, however,* that the funds due or to grow due to the said contractor from said city, town, township or other municipality may be released and paid to the said contractor by the financial officer of said city, town, township or other municipality upon the filing with said financial officer of a bond in double the sum of all claims filed under the provisions of this act against the said contract or the funds due or to grow due thereunder conditioned for the payment of such sum or sums as may be decreed to be due under any such claims, which bond shall be approved as to form by the chief law officer of such municipality and as to sufficiency by the financial officer with whom it is filed."

It will be observed that the statute requires that such bond shall be approved as to form by the chief law officer of the municipality and as to sufficiency by the financial officer with whom it is filed. The former approved the bond; the latter did not. It might be more accurate to say that the financial officer apparently had had no opportunity to do so since in a letter, written May 6th, 1931, by the city clerk to the city treasurer, the former advised that the contractor filed a bond "in double the amount of the stop-notice, approved by the corporation counsel, which bond I understand offsets the stop-notice, and on which basis I (the city clerk) signed a check for the Paino Corporation." Thereafter, and on June 1st, 1931, the municipal defendant made "another payment" to the contractor in the sum of $28,912.09. At this point we observe that it is not clear whether this is the check which

the city clerk, in his letter of May 6th, says he signed for the contractor, or whether it was a further payment. The fact, however, is not very important.

It further appears that when the work was completed the city refused to accept same and that thereafter, on November 7th, 1931, another lien claimant instituted a suit in Chancery for the purpose of foreclosing a stop-notice lien filed by it. All stop-notice claimants, including the plaintiff's assignor, were made defendants. The contractor then instituted an action at law in the United States District Court for the amount alleged to be due on its contract with the city of Plainfield. Later it filed a petition in bankruptcy and a trustee was appointed, who, being substituted as party plaintiff for the contractor, finally recovered judgment in the amount of $45,640.47 against the city. Subsequently, and on October 15th, 1934, this sum of money was disbursed by a decree of the Court of Chancery to which all parties, including the plaintiff, consented. The plaintiff received out of this fund the sum of $1,000 and an additional $500 contributed by the stop-notice claimants. Prior to this, and on January 7th, 1933, the Union Indemnity Company, which had furnished the bond on the stop-notice claim of the plaintiff, was declared insolvent.

The plaintiff-appellant argues that the city is liable for the difference between what he received from the fund deposited in the Court of Chancery and the amount stated to be due in the filed claim because after the stop notice was filed the city of Plainfield paid over to the contractor the amount then due, relying on the bond then filed, which was not approved as to sufficiency of surety by the financial officer of the city, and was therefore invalid. The respondent argues that the bond was for the protection of the city and the mere fact that the municipality retained the bond, without more, amounts to an approval by conduct.

The trial court took the view that the statute requiring approval of the bond by the municipal treasurer to its sufficiency was merely directory; that the omission of the approval by the treasurer as to its sufficiency did not invali-

date the bond or render it ineffectual to accomplish its purpose, relying on the case of *Sooy* ads. *State,* 38 *N. J. L.* 324. But that case, in our judgment, is quite different from the situation here presented and is hardly applicable. There a voluntary bond was given by the state treasurer for the faithful performance of his duties. The statute required that it should be approved by the senate, which was not done. In a suit on the bond by the state against the state treasurer and his sureties, the obligors attempted to evade liability by urging, among other things, that the bond had not been approved. The court held that the bond, being for the benefit of the state only, the mandate concerning approval was merely directory. That is not the situation here. The appellant, by filing the stop notice, acquired a lien on the fund in the hands of the municipality, due, or to become due, to the contractor. This lien might be dissolved by the filing of a bond in accordance with the provisions of section 5 of the statute. But here the bond was intended for the benefit and protection of stop-notice claimants as well as for the benefit of the municipality. The language of the statute makes this plain. The statute requires that the bond so given shall be "conditioned for the payment of such sum or sums as may be decreed to be due * * *." The trial judge assumed that the bond, when given, was sufficient and that the plaintiff "was not harmed by the failure to approve." Nothing in the stipulation of facts supports this assumption. It is a matter of common knowledge that at the time the bond was given (1931) many surety companies were in financial difficulty. The surety may have been insolvent at the time and it is quite conceivable that if the treasurer of the city had been given an opportunity to examine into the sufficiency of the surety, or had investigated the matter at all, he would not have accepted the bond as sufficient. If the bond had been solely for the benefit of the municipality, which obviously it was not, the failure of its approval would not have invalidated it (*Sooy* ads. *State, supra*), but where the bond was for the protection of the stop-notice claimant, as well as the municipality, the claimant was, under the statute (section

5, *supra*), entitled to the benefit of a bond, legal in form and approved as to the then sufficiency of the surety before his lien on the fund could be lifted.

The fact that the plaintiff participated in the distribution of the fund in Chancery is not fatal to his present suit. As we understand the facts from the stipulation, he was brought into Chancery as a party defendant and the consent decree was limited to the fund *then in hand* for distribution. But it must be remembered that a sum of about $29,000 (or more, if further payment were made to the contractor after the filing of plaintiff's lien) was released and paid to the contractor, more than three years previously, on the strength of the bond, which carried no approval as to its sufficiency by the treasurer of the municipal corporation which accepted it.

If the bond had not been accepted the amount paid at the time to the contractor would have been held subject to appellant's lien, or if the bond had gone to the financial officer it might have been rejected. The claimant, under the circumstances, was entitled to the protection, in the matter of the bond, given him by the statute.

In deciding this case, therefore, on the theory, first, that the statutory provision that the bond be approved by the financial officer as to sufficiency was directory, and, second, that the bond, when given, was good and sufficient, we think that the trial court fell into error. On the former proposition it was an error of law; on the latter, as assumption of fact unsupported by anything in the stipulation of the parties to warrant that conclusion.

The judgment will be reversed, and a *venire de novo* allowed, costs to abide the event.

*For affirmance*—WELLS, J. 1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, DEAR, WOLFSKEIL, RAFFERTY, COLE, JJ. 14.